CORRECTED 2/10/14

FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| GREATER LOS ANGELES AGENCY ON DEAFNESS, INC.; DANIEL JACOB; EDWARD KELLY; JENNIFER OLSON, on behalf of themselves and all others similarly situated, *Plaintiffs-Appellees*, | No. 12-15807 D.C. No. 3:11-cv-03458- LB |
| v. | OPINION |
| CABLE NEWS NETWORK, INC., incorrectly sued as Time Warner Inc., *Defendant-Appellant*. | |

Appeal from the United States District Court
for the Northern District of California
Laurel D. Beeler, Magistrate Judge, Presiding

Argued March 11, 2013
Submitted December 10, 2013
San Francisco, California

Filed February 5, 2014

Before: J. Clifford Wallace, M. Margaret McKeown,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge McKeown

## SUMMARY[*]

### California Law / Anti-SLAPP Statute

The panel vacated the district court's order denying CNN's motion brought under California's anti-SLAPP statute, seeking to dismiss a lawsuit that sought to secure equal access for the hearing-impaired by compelling CNN to caption videos posted on its website.

California's anti-SLAPP statute provides for the early dismissal of meritless lawsuits arising from a defendant's conduct in furtherance of its free speech rights. The panel held that plaintiffs' lawsuit targeted conduct in furtherance of CNN's free speech rights and fell within the scope of the anti-SLAPP statute. The panel further held that plaintiffs failed to establish a probability of prevailing on its claims under California's Unruh Civil Rights Act because plaintiffs had not shown intentional discrimination based on disability. The panel deferred decision on plaintiffs' claims under California's Disabled Persons Act pending further guidance from the California Supreme Court. The panel also held that at this juncture, none of CNN's constitutional challenges posed a barrier to plaintiffs' pursuit of its Disabled Persons Act claims.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Thomas R. Burke (argued), Rochelle L. Wilcox, Janet L. Grumer, Jeff Glasser, Davis Wright Tremaine, San Francisco, California; Ronald London, Davis Wright Tremaine, Washington, D.C., for Defendant-Appellant.

Laurence W. Paradis (argued), Mary-Lee K. Smith, and Michael Nunez, Disability Rights Advocates, Berkeley, California; Linda M. Dardarian and Jason H. Tarricone, Goldstein, Demchak, Baller, Borgen & Dardarian, Oakland, California; Peter Blanck, Syracuse, New York, for Plaintiffs-Appellees.

Karl Olson, Ram, Olson, Cereghino & Kopczynski, San Francisco, California, for Amici Curiae Los Angeles Times Communications LLC, McClatchy Newspapers, Inc., Hearst Corporation, California Newspaper Publishers Association, and California Broadcasters Association.

John F. Waldo, Portland, Oregon, for Amici Curiae Washington State Communication Access Project, Oregon Communication Access Project, Association of Late Deafened Adults (ALDA), Aloha State (Hawaii) Association of the Deaf, Arizona Association of the Deaf, California Association of the Deaf, Nevada Association of the Deaf, Idaho Association of the Deaf, and Oregon Association of the Deaf.

Howard A. Rosenblum and Andrew S. Phillips, National Association of the Deaf, Silver Spring, Maryland; Blake E. Reid and Angela J. Campbell, Institute for Public Representation, Georgetown Law, Washington, D.C., for Amici Curiae Telecommunications for the Deaf and Hard of

Hearing, Inc., National Association of the Deaf, and the Hearing Loss Association of America.

## OPINION

McKEOWN, Circuit Judge:

This appeal—which tests the boundaries of multiple state laws and reveals tensions between California's anti-discrimination law, on one hand, and its anti-SLAPP statute, on the other—boils down to two central questions: Does California's anti-SLAPP statute, Cal. Civ. Proc. Code §§ 425.16 *et seq.*, which permits a defendant to pursue early dismissal of meritless lawsuits arising from conduct by the defendant in furtherance of the right of petition or free speech, apply to a lawsuit seeking to secure equal access for the hearing-impaired by compelling Cable News Network, Inc. ("CNN") to caption videos posted on its web site? And, if so, has the Greater Los Angeles Agency on Deafness, Inc. ("GLAD") discharged its burden to show a probability of prevailing on the merits of its claims under California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51 *et seq.* ("Unruh Act"), and the California Disabled Persons Act, Cal. Civ. Code §§ 54 *et seq.* ("DPA")?

The magistrate judge answered no to the first question, declined to reach the second, and denied CNN's anti-SLAPP motion. CNN timely appealed. Consistent with the California legislature's express command to construe the anti-SLAPP statute broadly and our recent precedent, we hold that GLAD's action targets conduct in furtherance of CNN's free speech rights and falls within the scope of the anti-SLAPP statute. We also conclude that GLAD has failed to establish

a probability of prevailing on its Unruh Act claims.  The final question, whether the DPA applies to websites, is an important question of California law and raises an issue of significant public concern.  We defer decision on GLAD's DPA claims pending further guidance from the California Supreme Court.  In a companion order published concurrently with this opinion, we certify to the California Supreme Court this remaining dispositive question of state law.

## BACKGROUND

## I.   Statutory and Regulatory Framework for Captioning

Captions in media broadcasts come in various shapes and sizes.  They can identify content, speakers, sound effects, music, and emotions and may be either open or closed. "Closed" captions, unlike their "open" counterparts, are activated by the viewer and can be turned on and off.  Closed Captioning of Video Programming, 23 FCC Rcd. 16674, 16675 (2008) (declaratory ruling, order, and notice of proposed rulemaking).   In the online context, closed captioning is defined as "[t]he visual display of the audio portion of video programming."[1]  Closed Captioning of Video Programming Delivered Using Internet Protocol, 47 C.F.R. § 79.4(a)(6) (2012).  Such closed captioning—which GLAD seeks in its action—"provides access to individuals who are deaf or hard of hearing."  Closed Captioning of Internet Protocol-Delivered Video Programming: Implementation of the Twenty-First Century Communications & Video

---

[1] "Video programming" is defined as "[p]rogramming provided by, or generally considered comparable to programming provided by, a television broadcast station, but not including consumer-generated media." 47 C.F.R. § 79.4(a)(1).

Accessibility Act of 2010, 77 Fed. Reg. 19480-01, 19480 (Mar. 30, 2012) (to be codified at 47 C.F.R. pts. 15, 79) (final rule).

To secure better access to video programming for the hearing-impaired, Congress passed the Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (1996) (the "1996 Act") (codified as amended at 47 U.S.C. § 613). The 1996 Act directed the Federal Communications Commission ("FCC") to impose a closed captioning requirement for video programming broadcasted on television. *Id.* In line with this congressional directive, the FCC adopted rules and implementation schedules for closed captioning of television programming. *See* Closed Captioning & Video Description of Video Programming, 13 FCC Rcd. 3272, 3273 (1997) (report and order).

In 2010, in response to the growing presence of video programming on the Internet, Congress enacted the Twenty-First Century Communications and Video Accessibility Act ("CVAA"), Pub. L. No. 111-260, 124 Stat. 2751 (2010) (codified at 47 U.S.C. § 613). The CVAA amended the 1996 Act and directed the FCC to revise its regulations to require closed captioning of certain online video programming. *See* 47 U.S.C. § 613(c)(2). In January 2012, during the pendency of this appeal, the FCC promulgated its online captioning rules, which took effect on March 30, 2012. *See* Closed Captioning of Internet Protocol-Delivered Video Programming, 77 Fed. Reg. at 19480–81. The FCC's 2012 captioning rules require closed captioning of "full-length video programming delivered using Internet protocol . . . if the programming is published or exhibited on television in the United States with captions." 47 C.F.R. § 79.4(b). Under the 2012 captioning rules, online video clips—defined as

"[e]xcerpts of full-length video programming," *id.* § 79.4(a)(12)—are excluded from the online captioning requirement, *see id.* §§ 79.4(a)(2), (b). The 1996 Act, as amended by the CVAA, and the FCC's 2012 captioning rules do not authorize a private right of action to enforce alleged violations of the online captioning requirement and instead provide that the FCC "shall have exclusive jurisdiction with respect to any complaint" alleging such violations. 47 U.S.C. § 613(j); 47 C.F.R. § 79.4(f).

## II.  GLAD's Lawsuit

CNN is a wholly owned subsidiary of Turner Broadcasting System, Inc., which "is ultimately wholly owned by Time Warner Inc." CNN operates CNN.com, a publicly accessible web site containing online news videos. Most of these online videos are short video clips that excerpt programming previously broadcasted on television by CNN; some of the videos are shown exclusively on CNN.com. Approximately 100 to 120 video clips are posted on CNN.com every day, and the site features a searchable web archive of thousands of news videos. Although text articles accompany some of these online videos, none of them had closed captions at the time GLAD brought this action.

In December 2010, GLAD requested that Time Warner Inc. ("Time Warner") caption all of the videos on its news web sites, including CNN.com, to provide hearing-impaired visitors full access to the online videos. CNN responded that it offered a number of text-based services and explained that CNN would be "ready to provide whatever web access" then-pending federal rulemaking actions regarding the captioning of online videos "ultimately required."

Unable to reach an agreement with CNN over closed captioning, GLAD filed this putative class action in California state court in June 2011, six months before the FCC promulgated the 2012 online captioning rules. In its Complaint, GLAD alleged that CNN[2] violated the Unruh Act and the DPA by intentionally excluding deaf and hard of hearing visitors from accessing the videos on CNN.com. For these violations, GLAD requests damages, declaratory relief, fees and costs, and a preliminary and permanent injunction "requiring [CNN] to take steps necessary to ensure that the benefits and advantages offered by CNN.com are fully and equally enjoyable to persons who are deaf or have hearing loss in California."[3]

CNN removed this action to federal court, and the parties consented to jurisdiction before a magistrate judge. CNN filed a motion to strike under California's anti-SLAPP law, arguing that GLAD's Unruh Act and DPA claims arose from conduct in furtherance of CNN's free speech rights and that GLAD had failed to establish a probability of prevailing on its claims. The magistrate judge denied CNN's anti-SLAPP motion on the ground that CNN's conduct was not in

---

[2] Although GLAD initially named Time Warner as defendant in the complaint, the parties stipulated that CNN would be substituted for Time Warner.

[3] Because GLAD requests closed captioning for all current and future videos posted on CNN.com, including video clips and other programming that fall outside the scope of the FCC's 2012 online captioning rules, *see* 47 C.F.R. § 79.4 (requiring closed captioning only for full-length videos initially broadcasted with captions in the United States after certain dates), this appeal is not moot, *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) ("[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." (internal quotation marks omitted)).

furtherance of its free speech rights. Although acknowledging CNN's constitutionally protected right to publish online news videos, the magistrate judge found that CNN's speech merely "lurk[ed] in the background" of GLAD's action. The magistrate judge also rejected CNN's contention that GLAD's requested closed captioning requirement would deprive CNN of editorial control by forcing it to adopt an error-prone and costly technology. Relying on the D.C. Circuit's dicta in *Motion Picture Association of America, Inc. v. FCC*, 309 F.3d 796, 803 (D.C. Cir. 2002) ("*MPAA*"), the magistrate judge observed that "closed captioning is mechanical transcription that does not implicate content and the First Amendment."

## ANALYSIS

California's anti-SLAPP statute, enacted in 1992, provides "for the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *Club Members for an Honest Election v. Sierra Club*, 196 P.3d 1094, 1098 (Cal. 2008). In 1997, the California legislature amended the anti-SLAPP statute to state explicitly that the statute "shall be construed broadly." Cal. Civ. Proc. Code § 425.16(a) (as amended by Stats. 1997, ch. 271, § 1). Consonant with this legislative directive, the California Supreme Court has interpreted the anti-SLAPP statute broadly, cautioning that a narrow construction "would serve Californians poorly." *E.g.*, *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1120–22 (1999). Taking our cue from the California legislature and courts, we have followed suit. *See, e.g.*, *Manufactured Home Comtys. v. Cnty. of San Diego*, 655 F.3d 1171, 1176 (9th Cir. 2011) ("The legislature instructed courts that the statute shall be

construed broadly." (internal quotation marks omitted)); *Hilton v. Hallmark Cards*, 599 F.3d 894, 906 (9th Cir. 2010) (amended opinion) (collecting cases); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) (same).

In determining whether GLAD's action must be stricken under the broadly construed anti-SLAPP statute, we engage in a two-step inquiry. *See, e.g.*, *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002). First, we must determine whether CNN has made a prima facie showing that GLAD's action arises from conduct in furtherance of the exercise of CNN's constitutional right of petition or free speech in connection with an issue of public interest. *See id.* If CNN satisfies this threshold showing, the burden then shifts to GLAD at the second step to establish, by competent evidence, a probability that it will prevail on its Unruh Act and DPA claims. *See id.*; *see also* Cal. Civ. Proc. Code § 425.16(b)(1). In evaluating CNN's anti-SLAPP motion, we consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Cal. Civ. Proc. Code § 425.16(b)(2).

## I.   Anti-SLAPP Step One:  Act in Furtherance of Free Speech Rights

At the first step of the anti-SLAPP analysis, we ask whether GLAD's state law claims are based on conduct in furtherance of CNN's right of free speech in connection with a matter of public interest. *See City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002); *Martinez v. Metabolife Int'l, Inc.*, 113 Cal. App. 4th 181, 188 (2003) ("[I]t is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies . . . ." (citation omitted)). California courts "have interpreted this

piece of the defendant's threshold showing rather loosely," *Hilton*, 599 F.3d at 904, and have held that "a court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis, and then permit the parties to address the issue in the second step of the analysis, if necessary," *City of Los Angeles v. Animal Def. League*, 135 Cal. App. 4th 606, 621 (2006) (internal quotation marks omitted).

GLAD does not, and cannot, dispute that CNN's speech relates to a matter of public interest or that CNN has a protected free speech right to report the news. *See Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 165–66 (2003). The issue we must decide is whether GLAD's action takes aim at an act that furthers CNN's free speech rights. "An act is in furtherance of the right of free speech if the act helps to advance that right or assists in the exercise of that right." *Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 143 (2011). This is a classic case where framing the issue influences the outcome of the determination. Adhering to the California legislature's mandate to construe the anti-SLAPP statute broadly, we conclude that CNN has made a prima facie showing that GLAD's claims arise from CNN's conduct in furtherance of its right to report the news.

Our recent decision in *Doe v. Gangland Productions, Inc.*, 730 F.3d 946 (9th Cir. 2013) leads to this result. In *Gangland*, the plaintiff sued two production companies for broadcasting a television documentary without concealing his identity. *Id.* at 951–52. The production companies filed a motion to strike under California's anti-SLAPP statute, and the district court denied the motion on the ground that the production companies' conduct was not in furtherance of their free speech rights because the television broadcast

merely lurked in the background of the plaintiff's tort claims. *Id.* at 952–55.  We reversed in part because the production companies satisfied their threshold burden at the first step of the anti-SLAPP inquiry.  *Id.* at 953–55.  We reasoned that the plaintiff's claims were based on the companies' pre-broadcast interviews, which were in furtherance of their right of free speech.  *Id.* at 953–54.  We also explained that the plaintiff's action arose "directly from Defendants' act of broadcasting *Gangland*" and that "[b]ut for the broadcast and Defendants' actions in connection with that broadcast, Plaintiff would have no reason to sue Defendants."  *Id.* at 955.

Although *Gangland* involved a lawsuit challenging a pre-publication interview, its rationale has equal force here.  As in *Gangland*, GLAD's action arises directly from CNN's decision to publish and its publication of online news videos without closed captions and seeks an injunction that would require CNN to adopt such captions for every video on its web site.  Like the plaintiff in *Gangland*, GLAD would have no reason to sue CNN absent the news videos on CNN.com.  Indeed, GLAD acknowledges in its Complaint that CNN "goes to great effort to create and offer visitors to CNN.com video content precisely because many visitors prefer to experience the combined visual and audible content of a video" and asserts that CNN has "intentionally *presented the video content* on CNN.com in a way" that is inaccessible to hearing-impaired individuals.  Under the FCC's 2012 online captioning rules, CNN is required to caption only the full-length videos initially broadcast on television.  47 C.F.R. § 79.4(b).  But CNN's web site includes many broadcasts and clips that are not part of the television broadcast.  As CNN explains, many of the videos on CNN.com are shorter video clips, and some of its news videos are shown exclusively on CNN.com.  The web site contains far broader content than

CNN's television broadcast, and CNN makes affirmative decisions about what content to post on its web site and how that content is displayed. The decision to forego captioning is part of this editorial discretion and furthers CNN's free speech right to report the news.

Even if GLAD does not request any changes to the substantive content of CNN's online news videos, GLAD, by its own admission, seeks to change the way CNN has chosen to report and deliver that news content by imposing a site-wide captioning requirement on CNN.com. In doing so, GLAD targets conduct that advances and assists CNN in exercising its protected right to report the news. *See Hunter v. CBS Broad., Inc.*, 165 Cal. Rptr. 3d 123, 130–33 (Cal. Ct. App. 2013) (holding that a lawsuit arising from broadcasting company's allegedly discriminatory selection of a news anchor targeted conduct in furtherance of company's free speech rights); *cf. Rivera v. First Databank, Inc.*, 187 Cal. App. 4th 709, 715–17 (2010) (holding that lawsuit targeting "confusing language and format of [a] monograph" fell within scope of anti-SLAPP law); *Kronemyer v. Internet Movie Data Base, Inc.*, 150 Cal. App. 4th 941, 944, 947 (2007) (holding that the defendant's refusal to list plaintiff's name in credits was an act in furtherance of the defendant's free speech right not to speak). CNN's free speech rights do not merely lurk in the background of this case.

Attempting to elude the scope of the anti-SLAPP statute, GLAD attempts to frame its action as targeting CNN's "refusal to caption its online videos" rather than "CNN's presentation and publication of the news." In GLAD's view, its action demands nothing more than the neutral application of California's anti-discrimination laws to "CNN's

mechanical delivery process for its online news videos" without regard to the substantive content of those videos.

In support of its argument, GLAD relies on two D.C. Circuit cases and an FCC order. *See MPAA*, 309 F.3d at 803 (distinguishing captioning from regulations that were "related to [a] program's content" and noting that unlike creative works, "closed captioning is a straight translation of dialogue into text" (internal quotation marks omitted)); *Gottfried v. FCC*, 655 F.2d 297, 311 n.54 (D.C. Cir. 1981) ("A captioning requirement would not significantly interfere with program content."), *rev'd on other grounds*, *Cmty. Television of So. Cal. v. Gottfried*, 459 U.S. 498 (1983); Implementation of Video Description of Video Programming, 15 FCC Rcd. 15230, 15255 (2000) (noting that, in *Gottfried*, the D.C. Circuit concluded "that any requirement to provide programming with closed captioning would not violate the First Amendment"), *modified*, 16 FCC Rcd. 1251 (Jan. 18, 2001).

The D.C. Circuit cases and FCC order address whether a captioning requirement would violate the First Amendment, a question more appropriately reserved in this case for the second step. The California legislature "did not intend that in order to invoke the special motion to strike the defendant must first establish [his or] her actions are constitutionally protected under the First Amendment as a matter of law." *Governor Gray Davis Comm. v. Am. Taxpayers Alliance*, 102 Cal. App. 4th 449, 458 (2002) (alterations in original) (internal quotation marks omitted). The question at the first step is a different one: namely, whether GLAD's action is based on conduct in furtherance of CNN's free speech. Even if we accept GLAD's narrow view that its action targets CNN's refusal to adopt closed captioning as opposed to

CNN's presentation of the news, our conclusion would remain the same:  CNN's decision to display videos on CNN.com without closed captioning prior to the FCC's online captioning rules—even if not itself an exercise of free speech—constitutes conduct in furtherance of CNN's protected right to report the news.

Motivated by concerns about the potential costs, delay, and inaccuracies caused by captioning, CNN made the editorial decision to forego captioning when delivering and reporting the news on its web site.  Although GLAD presents conflicting evidence as to the putative expense and inaccuracies imposed by closed captioning, that evidence, even if fully credited, does not alter our view that CNN has made the requisite prima facie showing that GLAD's action targets an act—declining to caption online news videos—that furthers CNN's free speech right to report the news.  GLAD's evidence is instead more relevant to the question of the relative burden imposed by the captioning requirement for purposes of the First Amendment inquiry, which we address at step two of the anti-SLAPP inquiry.

In concluding that CNN's conduct is in furtherance of its free speech rights on a matter of public interest, we do not imply that every action against a media organization or any action imposing increased costs against such an organization falls within the scope of California's anti-SLAPP statute.  Nor do we suggest that the broad construction of the anti-SLAPP statute triggers its application in any case marginally related to a defendant's exercise of free speech.  We adopt instead a much more limited holding:  where, as here, an action directly targets the way a content provider chooses to deliver, present, or publish news content on matters of public interest, that action is based on conduct in furtherance of free speech rights

and must withstand scrutiny under California's anti-SLAPP statute.

## II. Anti-SLAPP Step Two:  Probability of Prevailing on Merits

Because CNN has made the threshold showing at step one of the anti-SLAPP analysis, we next determine whether GLAD has demonstrated a probability of prevailing on the merits of its Unruh Act and DPA claims.  Although the magistrate judge did not reach the second step of the analysis, at the parties' urging and in the spirit of judicial economy, we exercise our discretion to decide this legal issue in the first instance.  *See, e.g.*, *Wallace v. McCubbin*, 196 Cal. App. 4th 1169, 1195 (2011)  ("[W]e have discretion to decide the [second anti-SLAPP] issue ourselves, since it is subject to independent review.").  To satisfy its burden under the second step, GLAD must demonstrate that its claims have "only a minimum level of legal sufficiency and triability." *Soukup v. Law Offices of Herbert Hafif*, 139 P.3d 30, 51 (Cal. 2006) (internal quotation marks omitted).  In determining whether GLAD has satisfied this low burden, we "neither 'weigh credibility [nor] compare the weight of the evidence.  Rather, [we] accept as true the evidence favorable to the plaintiff . . . . and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.'" *Id.* at 36 n.3 (alterations in original) (citation omitted).

### A.  Unruh Act Claims

GLAD has failed to establish a probability of success on the merits of its Unruh Act claims because it has not shown intentional discrimination based on disability as required under California law.

The Unruh Act provides that "[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their . . . disability [or] medical condition . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).  By its terms, the Unruh Act "does not extend to practices and policies that apply equally to all persons." *Turner v. Ass'n of Am. Med. Colls.*, 167 Cal. App. 4th 1401, 1408 (2008) (citing Cal. Civ. Code § 51(c)).  Thus, to establish a violation of the Unruh Act independent of a claim under the Americans with Disabilities Act ("ADA"), GLAD must "plead and prove intentional discrimination in public accommodations in violation of the terms of the Act." *Munson v. Del Taco, Inc.*, 208 P.3d 623, 627 (Cal. 2009) (internal quotation marks omitted).  The California Supreme Court has clarified that the Unruh Act contemplates "willful, affirmative misconduct on the part of those who violate the Act" and that a plaintiff must therefore allege, and show, more than the disparate impact of a facially neutral policy.  *Koebke v. Bernardo Heights Country Club*, 115 P.3d 1212, 1228–29 (Cal. 2005) (internal quotation marks omitted); *Harris v. Capital Growth Investors XIV*, 805 P.2d 873, 893 (Cal. 1991), *superseded by statute on other grounds as explained in Munson*, 208 P.3d at 627–30; *see also Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1024–25 (N.D. Cal. 2012); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1116 (N.D. Cal. 2011).

The California Court of Appeal's reasoning in *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224 (2007) is instructive.  There, the plaintiffs, who were legally blind, alleged that Comcast violated the Unruh Act by packaging music services with television programming without an option for consumers, particularly blind

individuals, to buy the music service alone. *Id.* at 1229–30, 1237. Rejecting the plaintiffs' Unruh Act claims, the court explained that Comcast's practice of packaging and selling its products "applied equally to sighted and blind subscribers" because both groups were required to purchase services under the same policy. *Id.* at 1237. The court thus concluded that Comcast's policy, which was neutral on its face, was not actionable despite the alleged disproportionate impact on blind people. *Id.* at 1237–39.

Here, GLAD has similarly failed to establish the intentional discrimination needed to sustain an Unruh Act claim. At the time GLAD initiated this action, CNN did not offer closed captioning on any news video displayed on CNN.com. As such, its policy of displaying online video programming without closed captioning applied equally to all CNN.com visitors, hearing-impaired or not. Such conduct does not demonstrate CNN's "willful, affirmative misconduct" or intentional discrimination and, therefore, it cannot form the basis of an Unruh Act violation. *Koebke*, 115 P.3d at 1227–28 (internal quotation marks omitted); *see also Cullen*, 880 F. Supp. 2d at 1024–25 (holding that plaintiff failed to state an Unruh Act claim by alleging that Netflix failed to "caption a meaningful amount of its streaming library" because such conduct was not "willful, affirmative misconduct"); *Young*, 790 F. Supp. 2d at 1114, 1116 (holding that plaintiff failed to state an Unruh Act claim by alleging that Facebook's customer service system was difficult for her to use due to her bipolar disorder because Facebook's customer service system treated "*all* users in the same cold, automated way").

Although GLAD's Complaint asserts that CNN intentionally excluded deaf and hard of hearing individuals

from accessing CNN.com, these allegations fail to establish even a minimal showing of intentional discrimination and are belied by the record.  In response to GLAD's captioning request, CNN stated that it offered a number of text-based services and explained that it would be "ready to provide whatever web access is ultimately required" by the FCC's then-pending captioning rules.  Notably absent from the record is any evidence supporting an inference that CNN intentionally discriminated against hearing-impaired individuals on account of their disability.  That hearing-impaired individuals bore the brunt of CNN's neutral policy is insufficient to support an Unruh Act claim.  *See Koebke*, 115 P.3d at 1227–29.[4]

GLAD's reliance on *Hankins v. El Torito Restaurants, Inc.*, 63 Cal. App. 4th 510 (1998) is misplaced.  As an initial matter, *Hankins* does nothing to alter the California Supreme Court's clear statement in both *Harris* and *Koebke* that the Unruh Act requires a showing of willful, affirmative misconduct to establish intentional discrimination, a showing that GLAD simply cannot make on this record.  Furthermore, unlike in *Hankins*, where the defendant restaurant denied

---

[4] In *Koebke*, the California Supreme Court "acknowledged that *evidence* of disparate impact could be admitted in Unruh Civil Rights Act cases because such evidence may be probative of intentional discrimination in some cases . . . ." 115 P.3d at 1229 (internal quotation marks omitted).  GLAD offers no evidence or argument that the disparate impact against hearing-impaired individuals is probative of CNN's intentional discrimination against the deaf and hard of hearing.  Nor does GLAD adequately address, much less rebut, CNN's evidence that, even before this action, "CNN has been an active participant with the FCC in developing standards for closed captioning of IP video, and has [had] every intention of complying with" the FCC's now-implemented 2012 online captioning rules.

physically handicapped patrons access to a restroom that was otherwise available, GLAD seeks a service—closed captioning for online videos—that is denied to all visitors of CNN.com on a neutral basis. *See id.* at 518 (holding that restaurant intentionally discriminated where "a combination of [the restaurant's] policy and the physical layout of its premises allowed patrons who were not physically handicapped to use a restroom . . . but denied that same service to physically handicapped patrons *even though there was a restroom on the premises . . . that a physically disabled person could otherwise use*" (emphasis added)). CNN does not intentionally withhold from the hearing-impaired captioned videos that are otherwise available.

Equally unconvincing is GLAD's misguided effort to import the "deliberate indifference" standard into the Unruh Act context. Seizing upon a lone parenthetical in *Green v. San Diego Unified School District*, 226 F. App'x 677 (9th Cir. 2007), one of our unpublished, nonprecedential dispositions, and other inapposite cases, GLAD urges that "intentional discrimination under the Unruh Act consists of knowledge that a protected right is substantially likely to be infringed upon, and a failure to act upon that knowledge – 'deliberate indifference.'" We decline to adopt the deliberate indifference standard in light of the California Supreme Court's statement that a showing of intentional discrimination under the Unruh Act contemplates "willful, *affirmative* misconduct." *Koebke*, 115 P.3d at 1228 (emphasis added) (internal quotation marks omitted). We further reject GLAD's unsubstantiated claim that CNN failed to act upon knowledge that the protected rights of the deaf and hard of hearing would be violated absent closed captioning of CNN.com videos. Consequently, GLAD's Unruh Act claims

lack even the minimal merit necessary to withstand CNN's anti-SLAPP challenge.

## B.  DPA Claims:  CNN's Constitutional Arguments

CNN also attacks GLAD's state law claims on constitutional grounds, arguing that GLAD's claims and requested relief are preempted by federal law, violate CNN's free speech rights, and run afoul of the dormant Commerce Clause.  Typically, we would not reach these constitutional issues if the case could be resolved on other grounds.  *United States v. Sandoval–Lopez*, 122 F.3d 797, 802 n.9 (9th Cir. 1997); *see also Lee v. Walters*, 433 F.3d 672, 677 (9th Cir. 2005) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." (internal quotation marks omitted)).     Because we are certifying the DPA claims to the California Supreme Court, it is appropriate to address CNN's constitutional arguments as to those claims to assure the California Supreme Court that certification is both necessary and dispositive of this appeal.

At this juncture, none of CNN's constitutional challenges pose a barrier to GLAD's pursuit of its DPA claims.  We reiterate, however, that we decide only whether GLAD has demonstrated a "probability" that its DPA claims will prevail. *Soukup*, 139 P.3d at 50–51.  This requires only that the claims be "legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by [GLAD] is credited."   *Id.* at 51 (internal quotation marks omitted).  Even if GLAD's DPA claims have the requisite "minimal merit" to survive CNN's anti-SLAPP challenge, GLAD must still prove its claims with competent   evidence   in   the   district   court.   *See id.*

Accordingly, CNN could still prevail on those of its constitutional arguments that depend upon issues of fact at a later stage of the case. *See* Cal. Civ. Proc. Code § 425.16(b)(3) ("If the court determines that the plaintiff has established a probability that he or she will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, or in any subsequent action, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination in any later stage of the case or in any subsequent proceeding.").

## 1.  Preemption

We first address whether federal law preempts GLAD's DPA claims under the related doctrines of field preemption and conflict preemption. In analyzing preemption claims, we ordinarily "assume that the historic police powers of the States are not superseded unless that was the clear and manifest purpose of Congress." *Arizona v. United States*, 132 S. Ct. 2492, 2501 (2012) (internal quotation marks omitted). CNN maintains that the presumption against preemption does not apply because there has been a history of significant federal regulation of closed captioning. *See Ting v. AT&T*, 319 F.3d 1126, 1136 (9th Cir. 2003). We need not pass on this preliminary question because even without this presumption, GLAD has shown that, based on the evidence before us, its DPA claims have the minimal merit needed to withstand CNN's preemption challenges.

### a.  Field Preemption

Under the doctrine of field preemption, "the States are precluded from regulating conduct in a field that Congress,

acting within its proper authority, has determined must be regulated by its exclusive governance." *Arizona*, 132 S. Ct. at 2501. Field preemption "can be inferred either where there is a regulatory framework 'so pervasive . . . that Congress left no room for the States to supplement it' or where the 'federal interest [is] so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1023 (9th Cir. 2013) (alteration in original) (quoting *Arizona*, 132 S. Ct. at 2501). The 1996 Act, as amended by the CVAA, and the FCC's implementing regulations do not occupy the legislative field of closed captioning of videos on the Internet.

For one, the 1996 Act, which dealt with closed captioning of television programming, expressly provides that the act "shall not be construed to modify, impair, or supersede Federal, State, or local law unless expressly so provided." 1996 Act, Title VI, § 601(c)(1) (reprinted in 47 U.S.C. § 152, historical and statutory notes). This savings clause—which Congress left intact when it passed the CVAA—signifies that Congress did not intend to occupy the entire legislative field of closed captioning or to prohibit all private rights of action under state law, including the DPA.

Even if the 1996 Act evinced Congress's intent to preempt the field of closed captioning for *television* programming, the CVAA and the FCC's 2012 online captioning rules left ample room for state laws to supplement the federal regulatory scheme for *online* Internet closed captioning. Limited in its scope, the CVAA instructed the FCC to impose an online captioning requirement on a discrete subset of online video programming: namely, full-length video programming broadcasted on television with captions

in the United States after the effective date of the FCC's regulations. *See* 47 U.S.C. § 613(c)(2)(A). Complying with this circumscribed directive, the FCC promulgated online captioning rules that were also limited in scope. *See* Closed Captioning of Internet Protocol-Delivered Video Programming, 77 Fed. Reg. at 19489 ("We interpret Section 202(b) [of the CVAA] to cover any programming delivered to consumers using [internet protocol], provided that the programming was published or exhibited on television with captions after the effective date of the regulations."). Neither the CVAA nor the FCC regulations regulate shorter online video clips, full-length videos that were not shown on American television, or videos shown before the effective date of the FCC's online captioning rules.

We decline CNN's invitation to interpret the limited scope of the federal captioning scheme for online videos as indicative of Congress's intent to preclude broader regulation of online closed captioning under state law. In *Sprietsma v. Mercury Marine*, 537 U.S. 51 (2002), upon which CNN relies, the Supreme Court declined to view an agency's "decision not to adopt a regulation . . . as the functional equivalent of a regulation prohibiting all States and their political subdivisions from adopting such a regulation," where, as here, there was no authoritative statement or ruling from Congress or the agency precluding state regulation. *Id.* at 65–68. Thus, the limited federal regulatory and statutory framework does not occupy the field of closed captioning, particularly for online video programming.[5]

---

[5] Although the CVAA and the FCC's implementing regulations do not "authorize any private right of action to enforce any requirement *of this section*" and instead provide that the FCC "shall have exclusive jurisdiction . . . [over] any complaint *under this section,*" 47 U.S.C.

### b.  Conflict Preemption

At this stage, CNN fares no better under its related theory of conflict preemption.  Conflict preemption applies "where compliance with both federal and state regulations is a physical impossibility," and in "those instances where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 132 S. Ct. at 2501 (internal quotation marks omitted).  Based on the pleadings and limited evidentiary record in this case, GLAD has shown that its claims have a "minimum level of legal sufficiency and triability" to withstand CNN's conflict preemption challenge at this early stage of the litigation.  *Soukup*, 139 P.3d at 51 (internal quotation marks omitted).

Crediting GLAD's evidence only for purposes of this anti-SLAPP appeal, we conclude that CNN's compliance with the CVAA, applicable FCC regulations, and the DPA is not "a physical impossibility." *Arizona*, 132 S. Ct. at 2501 (internal quotation marks omitted).  As noted earlier, the CVAA and FCC regulations are limited to a subset of all online videos and require closed captioning of those videos under a specified timetable.  For CNN.com videos outside the scope of the federal captioning scheme, nothing in the CVAA or the FCC's regulations conflicts with GLAD's right to seek a broader closed captioning requirement encompassing those

§ 613(j) (emphasis added);  47 C.F.R. § 79.4(f), the FCC's exclusive jurisdiction over complaints under the CVAA does nothing to extinguish GLAD's right to pursue broader relief for online captioning under the DPA, *see National Ass'n of the Deaf v. Netflix, Inc.* ("*NAD*"), 869 F. Supp. 2d 196, 205 (D. Mass. 2012) ("There is no indication that the CVAA . . . extinguishes private rights of action under the ADA for closed captioning of video programming on the Internet.").

videos under California law or with its ability to comply with state-imposed requirements. *NAD*, 869 F. Supp. 2d at 203–05. To the extent that the federal captioning scheme and the DPA may require different captioning requirements or deadlines, these differences do not "create a 'positive repugnancy' between the two laws" or otherwise demonstrate an irreconcilable conflict between federal law and the DPA because CNN can comply with both. *Id.* at 205 (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992)).

Nor does the record, at this procedural juncture, lead to the conclusion that the DPA presents an obstacle to Congress's purpose in enacting a federal captioning scheme for *online* video programming. Congress's purpose in enacting the CVAA was to "update the communications laws to help ensure that individuals with disabilities are able to fully utilize communications services and equipment and better access video programming." S. Rep. No. 111-386 (2010). The limited record in this anti-SLAPP appeal suggests that applying the DPA to compel CNN to caption its online news videos for California visitors may supplement, rather than impede, the underlying purposes of the federal captioning scheme for online news videos. Consequently, we cannot conclude, on the pleadings and record before us, that GLAD's DPA claims are foreclosed by the doctrine of conflict preemption.

## 2. Freedom of Speech

CNN next argues that imposing a closed captioning requirement under the DPA violates CNN's free speech rights under the First Amendment of the United States Constitution

and Article I, Section 2 of the California Constitution.[6] CNN chiefly contends that interpreting the DPA to require closed captioning on CNN.com imposes either an unconstitutional prior restraint or alternatively an impermissible burden on CNN's speech that fails intermediate scrutiny.[7] Accepting as true the evidence favorable to GLAD, we hold that GLAD's DPA claims have the requisite minimal merit to survive CNN's free speech challenge.

### a.  Prior Restraint

"Prior restraints on speech are disfavored and carry a heavy presumption of invalidity." *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1023 (9th Cir. 2008) (internal quotation marks omitted). A prior restraint is an administrative or judicial order that forbids certain communications issued before those communications occur. *Alexander v. United States*, 509 U.S. 544, 549–50 (1993). As the Supreme Court has recognized, "[n]ot all injunctions that may incidentally affect expression . . . are prior restraints." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 763 n.2 (1994) (internal quotation marks omitted). Consistent with *Madsen*, we have held that a statute permitting injunctions

---

[6] Consistent with the parties' briefing, and because no injunction has yet been imposed against CNN, we construe CNN's free speech argument as an as-applied constitutional challenge to the DPA.

[7] CNN also argues that a captioning requirement would compel it to speak by forcing it to report news content or express certain views. This is not so. A captioning requirement would simply require CNN to express the same speech it already expresses to hearing visitors of CNN.com. *See MPAA*, 309 F.3d at 803 (distinguishing captioning from regulations that were "related to a program's content" and noting that unlike creative works, "closed captioning is a straight translation of dialogue into text").

against speech is not *per se* unconstitutional and have further clarified that "[c]ontent-neutral injunctions that do not bar all avenues of expression are not treated as prior restraints." *Maldonado v. Morales*, 556 F.3d 1037, 1047 (9th Cir. 2009). The captioning requirement GLAD seeks under the DPA is a content-neutral injunction that requires CNN to provide closed captioning on videos posted to CNN.com. The evidentiary record, construed in GLAD's favor, shows that there is at least minimal merit to GLAD's contention that the requested injunction neither prohibits nor forbids CNN's speech but instead endeavors to make that speech accessible to hearing-impaired individuals. Therefore, for purposes of our anti-SLAPP analysis, we reject CNN's contention that interpreting the DPA to require CNN to caption its news videos would impose an unconstitutional prior restraint under the First Amendment or California Constitution.[8]

### b. Intermediate Scrutiny

Equally unavailing, at this preliminary stage of the proceedings, is CNN's alternative argument that construing the DPA to require captioning impermissibly burdens its free speech rights and fails under intermediate scrutiny. GLAD's evidence, which we accept as true in this anti-SLAPP appeal,

---

[8] That the California Constitution's guarantee of free speech is "more definitive and inclusive than the First Amendment" does not alter our conclusion that GLAD's requested injunction is not a prior restraint on speech under either provision. *See Wilson v. Superior Court*, 532 P.2d 116, 120 (Cal. 1975). California courts do not apply a broader definition of "prior restraint" when interpreting the more inclusive free speech provisions of the California Constitution. *E.g.*, *Hurvitz v. Hoefflin*, 84 Cal. App. 4th 1232, 1241 & n.5 (2000) (noting broader scope of California Constitution but applying definition of "prior restraint" adopted by the Supreme Court in the First Amendment context).

shows that imposing a content-neutral captioning requirement under the DPA would not burden "substantially more speech than is necessary to further the government's legitimate interests." *E.g.*, *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989). First, we note that the limited record establishes that interpreting the DPA to permit a captioning requirement as a remedy for alleged violations of that statutory regime would advance California's legitimate and substantial interests in preventing discrimination and ensuring equal access to the hearing-impaired. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 625 (1984) ("A State enjoys broad authority to create rights of public access on behalf of its citizens."); Closed Captioning of Internet Protocol-Delivered Video Programming, 77 Fed. Reg. at 19480 (noting that a closed captioning requirement would further Congress's goal of better enabling hearing-impaired individuals to view online video programming on equal terms). Taking the evidence in GLAD's favor, we conclude that the captioning requirement GLAD seeks is narrowly tailored to further these interests by ensuring that "the benefits and advantages offered by CNN.com are fully and equally enjoyable to persons who are deaf or have hearing loss in California."

Although CNN presents expert testimony that a captioning requirement could pose technical challenges, cause delays in publishing news, substantially increase CNN's costs, and introduce inaccuracies into CNN's news content, GLAD has offered rebuttal evidence in the form of expert testimony regarding the feasibility, relative accuracy, and limited expense of the requested captioning requirement. Crediting GLAD's evidence, as we must at the second step of the anti-SLAPP analysis, we conclude that CNN has not defeated as a matter of law GLAD's claim that enforcement of the DPA through a captioning requirement survives

intermediate scrutiny.  *See* Closed Captioning of Internet-Protocol-Delivered Video Programming, 77 Fed. Reg. at 19486 ("As an initial matter, closed captioning requirements implicate the First Amendment only marginally at best."); *see also Gottfried*, 655 F.2d at 311 n.54 (rejecting, in dicta, First Amendment challenge to captioning requirement for television programming on ground that a "captioning requirement would not significantly interfere with program content"); Implementation of Video Description of Video Programming, 15 FCC Rcd. at 15255 ("[T]he U.S. Court of Appeals for the D.C. Circuit concluded nearly twenty years ago that any requirement to provide [television] programming with closed captioning would not violate the First Amendment.").  Accordingly, GLAD's state law claims have at least the "minimal merit" necessary to survive CNN's free speech challenge at this juncture.

### 3.  Dormant Commerce Clause

In a final attempt to identify a constitutional infirmity in GLAD's claims, CNN asserts that a captioning requirement would impermissibly burden interstate commerce and violate the dormant Commerce Clause.  CNN's dormant Commerce Clause challenge fails to defeat GLAD's DPA claims at this stage of the litigation.

The Commerce Clause of the United States Constitution empowers Congress to "regulate Commerce . . . among the several States."  U.S. Const. Art. I, § 8, cl. 3.  "Courts have long read a negative implication into the clause, termed the 'dormant Commerce Clause,' that prohibits states from discriminating against interstate commerce." *Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 731 F.3d 843, 846 (9th Cir. 2013).  The first step in our analysis is to

determine whether the DPA either discriminates against or directly regulates interstate commerce. *Brown–Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986). CNN does not argue that the DPA—which applies evenhandedly to in-state and out-of-state news providers—discriminates against out-of-state entities. Consequently, we focus our inquiry on CNN's contention that imposing a captioning requirement under the DPA directly regulates commerce that takes place wholly outside of California.[9]

### a. Direct Regulation of Interstate Commerce

Direct regulation of interstate commerce "occurs when a state law directly affects transactions that take place across state lines or entirely outside of the state's borders." *Valley Bank of Nev. v. Plus Sys., Inc.*, 914 F.2d 1186, 1189–90 (9th Cir. 1990) (internal quotation marks omitted). The dormant Commerce Clause forbids a state from regulating commerce "that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989) (internal quotation marks omitted). In determining whether the DPA directly regulates interstate commerce, we focus our inquiry on the "practical effect" of the statute. *See id.*; *S.D. Myers, Inc. v. City & Cnty. of S.F.*, 253 F.3d 461, 467 (9th Cir. 2001).

---

[9] CNN also contends, without support, example, or evidence, that applying the DPA could "potentially subject CNN to inconsistent legislation from other states." CNN's contention is conclusory and speculative.

Crediting the evidence submitted by GLAD, we conclude that the DPA, which applies only to CNN's videos as they are accessed by California viewers, does not have the practical effect of directly regulating conduct wholly outside of California. Even though CNN.com is a single website, the record before us shows that CNN could enable a captioning option for California visitors to its site, leave the remainder unchanged, and thereby avoid the potential for extraterritorial application of the DPA. *See Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 961 (N.D. Cal. 2006) ("*NFB*") (rejecting Target's dormant Commerce Clause challenge to DPA and Unruh Act on ground that "Target could choose to make a California-specific website" and stating that even if Target changed "its entire website in order to comply with California law, this does not mean that California is regulating out-of-state conduct"). Although CNN asserts that creating a California-specific version of its site would not be "feasible," CNN's evidence does not defeat GLAD's claim to the contrary.

### b. *Pike* Balancing

Our inquiry, however, does not end there. We must next subject the imposition of a captioning requirement to the balancing test set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970) and ask whether the "burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Id.* at 142. Where, as here, "a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved . . . ." *Id.* Applying this test at this stage of the litigation and accepting as true GLAD's evidence, we

determine that any burden imposed by the DPA is not clearly excessive in relation to California's putative local benefits.

California has a legitimate interest in providing hearing-impaired citizens equal access to online news videos and protecting its citizens from disparate discriminatory impact. *Cf. Roberts*, 468 U.S. at 625.  These putative benefits are significant and are not minimized by the FCC's limited online captioning regulations, which do not cover much of the news videos displayed on CNN.com.  GLAD has presented sufficient evidence to defeat CNN's claim that the burdens the DPA may impose are clearly excessive in relation to these significant benefits.  In fact, CNN already serves different versions of its home page depending on the visitor's country, *see* www.cnn.com (last visited Jan. 8, 2014), and provides no explanation for why it could not do the same for California residents.  We therefore conclude, at this preliminary stage in the proceedings, that GLAD's claims have the minimal merit necessary to withstand CNN's dormant Commerce Clause challenge.

### C.  DPA Claims:  Certification to California Supreme Court

Having disposed of the Unruh Act claims and addressed CNN's constitutional challenges, we are left with the merits of GLAD's DPA claims.  CNN argues that GLAD cannot prove a probability of success on the merits of its DPA claims because the DPA does not apply to non-physical places like CNN.com, which is a virtual location on the Internet.  For the reasons articulated in our concurrently filed certification order, we reserve decision on this question and respectfully request that the California Supreme Court answer this important and unresolved issue of state law.  We stay the

issuance of the mandate, withdraw this case from submission pending further order of this court, and retain jurisdiction over further proceedings.[10]

**VACATED.**

---

[10] With  regard to the issues decided in this opinion, the normal rules governing petitions for rehearing and petitions for rehearing en banc shall apply.