John Johnston, United States Magistrate Judge
I. Introduction
This case appeared in this Court after Defendant BNSF filed for removal on August 16, 2017. (Doc. 1). This is a toxic tort case related to asbestos claims coming out of Libby, Montana.
On November 28, 2017, the Montana Supreme Court issued an Order Establishing the Asbestos Claims Court and Consolidating Cases (the "Order"), which created a new court to handle all state law asbestos claims. (Doc. 57-1).
On that same day, the Great Falls Tribune published an article with statements attributed to McGarvey, Heberling, Sullivan & Lacey ("MHSL"), the law firm representing Plaintiff Lloyd E. Underwood ("Mr. Underwood"). Over the next few months, other similar articles followed with quotations and statements attributed to MHSL from various sources, including the Associated Press (Nov. 31, 2017), The Western News (Dec. 1, 2017), The Daily Inter Lake (Jan. 7, 2018), the Flathead Beacon (Jan 16, 2018), NBC Montana (Jan. 22, 2018), and Courthouse News Service (Jan. 25, 2018). (Doc. 57 at 3-9; see Docs. 57-2 to 57-9). In general, the statements involved discussion of the Montana Supreme Court's new Asbestos Claims Court, as well as general information regarding asbestos claims and the course of litigation.
On January 30, 2018, BNSF filed a motion seeking a protective order against MHSL, requesting a "narrow" order limiting MHSL from making further statements to avoid potential prejudice to the jury pool. (Doc. 56). Mr. Underwood filed his Response on February 28, 2018, arguing that MHSL had not violated Rule 3.6 and that BNSF had not met its burden for a protective order. (Doc. 63). On March 14, 2018, BNSF filed its Reply. (Doc. 64). This issue has been fully briefed and is ripe for adjudication.
II. Legal Standard
Rule 3.6 of the Montana Rules of Professional Conduct ("MRPC") is identical *956 to the widely-accepted Model Rule of Professional Conduct:
Rule 3.6 - Trial Publicity
(a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.
MRPC Rule 3.6(a). In determining whether a lawyer's statements run the risk of materially prejudicing the case at hand, a court considers such factors as evaluating the statements themselves, the timing of the challenged statements, and whether the statements were published in the jury pool area. Gentile v. State Bar of Nevada, 501 U.S. 1030, 1044, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991). Furthermore, Rule 3.6 also list various exceptions:
(b) Notwithstanding paragraph (a), a lawyer may state:
(1) the claim, offense or defense involved and, except when prohibited by law, the identity of the persons involved;
(2) information contained in a public record;
(3) that an investigation of a matter is in progress;
(4) the scheduling or result of any step in litigation;
(5) a request for assistance in obtaining evidence and information necessary thereto;
(6) a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest; and
(c) Notwithstanding paragraph (a), a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client. A statement made pursuant to this paragraph shall be limited to such information as is necessary to mitigate the recent adverse publicity.
MRPC Rule 3.6(b)-(c).
The Ninth Circuit has stated that orders prohibiting a party's attorney from making statements to the media are "properly characterized as a prior restraint" on speech. Levine v. U.S. Dist. Court , 764 F.2d 590, 595 (9th Cir.1985). "Prior restraints on speech are disfavored and carry a heavy presumption of invalidity." Greater Los Angeles Agency on Deafness v. Cable News Network, 742 F.3d 414, 430 (9th Cir. 2014) (quoting Long Beach Area Peace Network v. City of Long Beach , 574 F.3d 1011, 1023 (9th Cir. 2009) ). The party seeking a protective order "has the burden of proving 'good cause,' which requires a showing 'that specific prejudice or harm will result' if the protective order is not granted." In re Roman Catholic Archbishop of Portland in Oregon , 661 F.3d 417, 424 (9th Cir. 2011) (quoting Foltz v. State Farm Mut. Auto. Ins. Co. , 331 F.3d 1122, 1130 (9th Cir. 2003) ).
However, "speech [that is] otherwise entitled to full constitutional protection may nonetheless be sanctioned if it obstructs or prejudices the administration of justice." Standing Committee on Discipline of U.S. Dist. Court for Cent. Dist. of California v. Yagman , 55 F.3d 1430, 1442 (9th Cir. 1995). The Supreme Court has also held that the standard for such prior restraints is more lenient when restricting lawyers. This is because lawyers have access to special information through discovery and client communications, and therefore *957 their extrajudicial statements pose a threat to the fairness of a pending proceeding, since lawyers' statements are likely to be received as especially authoritative. Gentile , 501 U.S. at 1074, 111 S.Ct. 2720 (quoting Neb. Press Ass'n v. Stuart , 427 U.S. 539, 601 n.27, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976) (citation and alteration omitted) ).
III. Analysis
BNSF argues that MHSL's statements "serve only to create an easily searchable public record to establish arguments of questionable admissibility ... to prevent BNSF from obtaining a fair and impartial trial ... to be inflammatory ... to sway the court of public opinion ... [and to] potentially taint any jury pool[.]" (Doc. 57 at 15). BNSF specifically argues that MHSL's statements may prejudice a potential jury pool in the following ways:
a) That [MHSL] has represented 2,000+ plaintiffs - all of whom have an asbestos-related disease;
b) that the Court will be prioritizing cases in a manner to imply that the sickest plaintiffs would go to trial first;
c) that this is a second round of cases after BNSF settled cases from the first round because of its transportation of asbestos-laden ores;
d) That the cases are timely filed or due to long latency periods;
e) That asbestos-containing products is the cause-in-fact of "killing" as many as 400 people and sickening close to 3000 and that their clients are dying at such a rate that they are "stacking" up on plaintiff's counsel's desk; and
f) That other plaintiff's have received over $ 68 million dollars in compensation.
(Id. at 9-10). BNSF argues: "[o]ur system of justice properly requires that civil litigants be assured the right to a fair trial. 'The very purpose of a court system is to adjudicate controversies, both criminal and civil, in the calmness and solemnity of the courtroom according to legal procedures.' " (Id. at 10 (quoting Hirschkop v. Snead , 594 F.2d 356, 373 (4th Cir. 1979) (quoting Cox v. Louisiana , 379 U.S. 559, 583, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965) (Black, J., dissenting) ) ) ). BNSF states that in Hirschkop , the Court specifically recognized that "narrower" means of safeguarding litigants' rights could be employed "in proper cases." (Id. )
MHSL, however, argues that there is no material prejudice from its statements to various media outlets. Moreover, MHSL argues that it only engaged in speech that is specifically permitted under Rule 3.6(b). (Doc. 63 at 7-8).
Significantly, the eight articles cited in BNSF's brief bear no relation to the present case. Three are limited to the topic of the establishment of the Montana Asbestos Court, four relate to the claims filing deadline for the W.R. Grace Personal Injury Bankruptcy Trust, and the eighth article is focused on the historical actions of W.R. Grace and the State of Montana.
(Id. at 8). Because the statements are unrelated to the instant action, MHSL argues, there is no Rule 3.6 violation, and there is no material prejudice to BNSF, and therefore no need for a protective order. "When lawyers speak out on matters unconnected to a pending case, there is no direct and immediate impact on the fair trial rights of litigants." Yagman , 55 F.3d at 1443.
A. Rule 3.6
The Comment to the American Bar Association Model Rules of Professional Conduct ("ABA Model Rule") notes the necessity of prior restraints to preserve a party's right to a fair trial:
*958 Preserving the right to a fair trial necessarily entails some curtailment of the information that may be disseminated about a party prior to trial, particularly where trial by jury is involved. If there were no such limits, the result would be the practical nullification of the protective effect of the rules of forensic decorum and the exclusionary rules of evidence.
ABA Model Rule 3.6, Comment 1. However, the Comment also notes that a "balance" is necessary to promote social interests in free discourse:
On the other hand, there are vital social interests served by the free dissemination of information about events having legal consequences and about legal proceedings themselves. The public has a right to know about threats to its safety and measures aimed at assuring its security. It also has a legitimate interest in the conduct of judicial proceedings, particularly in matters of general public concern.
Id.
Both parties cite to Gentile v. State Bar of Nevada , 501 U.S. 1030, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991). In Gentile , the State Bar of Nevada filed a complaint against Gentile under a rule identical to Rule 3.6 after Gentile held a press conference on behalf of his indicted client, which ultimately ended in an acquittal for his client. Id. at 1033, 111 S.Ct. 2720. The Supreme Court ruled that the State of Nevada's application of the rule was unconstitutional, but affirmed the viability of Rule 3.6 and the general proposition that a lawyer's speech could be curtailed. Id. However, the Court was unconvinced that Gentile either knew or should have known that his statements made six months before trial would create a substantial likelihood of material prejudice. Id. at 1039, 111 S.Ct. 2720.
Here, in considering whether MHSL violated Rule 3.6, the Court finds that MHSL did not now know that its statements would cause a substantial risk of materially prejudicing the jury pool, assuming such prejudice existed (see below). As stated above, in determining the risk of prejudice, the Court must consider the statements themselves, the timing of the statements, and whether they were published in the jury pool. Of the eight statements BNSF cites, only one was published in Cascade County, and one was published on a state-wide news website. The others were posted in local newspapers in Lincoln, Flathead, and Lake Counties, and as far away as San Luis Obispo, California. (See Docs. 57-2 to 57-9). Furthermore, trial in this case is not set until March 18, 2019. (See Doc. 54). The latest publication was made in January of 2018-fifteen months before trial. Thus, because of the remoteness of the statements, both temporally and geographically, the Court finds that MHSL did not know and could not have reasonably known that its statements could create a substantial likelihood of materially prejudicing the instant action, assuming any prejudice does exist.
Furthermore, the statements made by MHSL fall within the exceptions listed in Rule 3.6(b). Among other things, a lawyer may state:
(1) the claim, offense or defense involved and, except when prohibited by law, the identity of the persons involved;
(2) information contained in a public record; [or] ...
(4) the scheduling or result of any step in litigation ...
MRPC 3.6(b). In reviewing the publications and MHSL's statements, the Court finds that these statements fall generally within the exception to Rule 3.6(a). For example, in the article in the Great Falls *959 Tribune, published on September 18, 2017, the article states that "Sullivan [an attorney at MHSL] spoke with the tribune Monday about the procedural status of these and past asbestos-related cases. He declined to speak about the substance of the cases themselves." (Doc. 57-2 at 1). This information goes to "the claim, offense or defense involved," references the procedure of the litigation, and is in the public record. Furthermore, Sullivan repeatedly withheld information from the publication which would have run afoul of Rule 3.6 or other ethical rules. (Id. (e.g. "Sullivan said the amount awarded to previous clients in asbestos-related cases remains confidential") ). Therefore, MHSL's statements do not violate Rule 3.6.
B. Protective order
BNSF argues that even if the statements do not technically violate Rule 3.6, the Court should grant a protective order to prevent unjustifiable and "unrestrained pollution of the jury pool." (Doc. 57 at 14). In order to be entitled to a protective order, BNSF must demonstrate that "(1) the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest; (2) the order is narrowly drawn; and (3) less restrictive alternatives are not available." Levine v. U.S. Dist. Court for Cent. Dist. of California , 764 F.2d 590, 595 (9th Cir. 1985) (internal citations omitted).
The Court finds that there is no showing of prejudice sufficient to warrant a protective order. As an initial matter, BNSF must show that MHSL's statements present either "a clear and present danger" or "a serious and imminent threat to a protected competing interest." Id. BNSF does have an interest in preserving its right to a trial by an impartial jury. Thiel v. S. Pac. Co. , 328 U.S. 217, 220, 66 S.Ct. 984, 90 L.Ed. 1181 (1946). As stated above, however, the risk of prejudice or danger to that right is remote when the publicized statements do not specifically refer to the litigation or the parties involved. In the eight publications BNSF cites, MHSL does not reference Mr. Underwood, only asbestos claims in general, mostly related to the Asbestos Claims Court. Furthermore, the geographic and temporal remoteness of the statements also cuts against BNSF's claim of prejudice, as the most recent statement occurred some fifteen months before trial.
Moreover, a protective order is a severe limitation on the First Amendment right to free speech, and the Court is required to consider less-restrictive alternatives. BNSF argues that less restrictive measures "entail serious costs to the system," and that the State has a substantial interest in preventing lawyers from imposing additional costs on the system and its litigants. (Doc. 57 at 16 (quoting Gentile , 501 U.S. at 1075, 111 S.Ct. 2720 ) ). However, a protective order must be "narrowly drawn," with no "less restrictive alternatives" available. Levine , 764 F.2d at 595. Here, BNSF does not argue that less restrictive alternatives would be inadequate, simply costly. (Doc. 57 at 16 ("[e]ven if a fair trial can ultimately be insured through voir dire, change of venue, or some other device, these measures entail serious cost")(quoting Gentile , 501 U.S. at 1075, 111 S.Ct. 2720 ) ). BNSF's cost analysis does not supplant the protections of the First Amendment. Because less restrictive alternatives are available, such as voir dire, the Court must not grant a protective order.
Finally, upon reviewing the litany of cases cited by both parties, the Court notes that other courts have been unwilling to grant a protective order in more egregious circumstances. See e.g. , *960 In re Dan Farr Prods. , 874 F.3d 590, 593 (9th Cir. 2017) ; Doe v. City of San Diego , 2014 WL 11997808 (S.D. Cal. 2014) ; Doe v. Hawaii , 2011 WL 4954606 (D. Hi. 2011). Thus, the Court finds that MHSL's statements do not justify a protective order.
The Court, however, would caution the parties to exercise restraint in further dealings with the media, and to "maintain an atmosphere in which a fair trial could be conducted." Doe v. Hawaii , 2011 WL 4954606 at *6 (quoting Levine , 764 F.2d at 593 ).
Based on the foregoing, the Court finds that a protective order is not warranted. As such, BNSF's motion will be denied without prejudice.